133 So.2d 729 (1961)
Emmitt Monroe SPENCER, also known as Emitt Spencer, also known as Emmett Monroe Spencer, also known as Emmett Spencer, Appellant,
v.
STATE of Florida, Appellee.
No. 31108.
Supreme Court of Florida.
October 25, 1961.
Robert C. Youmans and Tom O. Watkins, Key West, for appellant.
Richard W. Ervin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
*730 THORNAL, Justice.
Appellant Spencer has been sentenced to death pursuant to a judgment of conviction based upon a jury verdict finding him guilty of murder in the first degree with no mercy recommendation.
The sole points assigned for reversal were the refusal of the trial judge to exclude two witnesses from the court room during the trial, and certain alleged inflammatory remarks to the jury by the Assistant State Attorneys.
From the witness stand, the appellant denied most of the critical evidence presented by the State. Nevertheless, the record is permeated with evidence which, if believed by the jury, would thoroughly support the verdict.
During the early hours of the morning of April 15th, 1960, a deputy sheriff found one Johnnie T. Keen bludgeoned to death in his small cottage in Key West. In describing the cause of death, a physician later testified that the head of the victim had been struck so many times with a blunt instrument that it was impossible to determine the number of blows. On the early evening of April 14, 1960, appellant Spencer, his girl friend and a hitch-hiker were apprehended by a Highway Patrol Trooper, John H. Cox, near Clermont in South Lake County. Spencer, thirty years old, was driving an automobile with the other two as passengers. His girl friend, whom he described as his "common law wife," was eighteen. The Trooper signaled the driver to stop on a routine apprehension for speeding. When Spencer was requested to produce his driver's license, he handed to the Trooper the driver's license of the dead Keen. Upon careful examination of the date of birth and weight of the named licensee, the Trooper deduced that the person to whom the license had been issued was obviously older and considerably heavier than Spencer. This observation set in motion a chain of circumstances which included a chase through South Lake County at speeds approximating 125 miles an hour, a gun fight between the Trooper and Spencer, in which the former was wounded, and the ultimate arrest of Spencer by G.H. Neely, a second Highway Patrol Trooper, who had joined in the chase. Later investigation of the license tag number by Lake County officers revealed that the automobile belonged to the murdered Keen. The Sheriff of Monroe County apparently was contacted at once. This led to the early morning discovery of Keen's body on April 15th. Subsequently, Spencer admitted the murder to a representative of the Florida Sheriffs' Bureau and also to two Monroe County Deputies Sheriff. From the witness stand his girl friend testified that he had admitted it to her just before they fled Key West in Keen's automobile on the morning of April 14th. The hitch-hiker, incidentally, was in no way connected with the crime. It was apparent that Keen had been struck on the head innumerable times with a hammer which was found at the scene. Spencer's landlady identified the hammer as one which she had loaned to appellant at his request in order to "repair a table." There were numerous other circumstantial details in the evidence which pointed to the appellant as the perpetrator of this very hideous murder.
It is clear from this record that this appellant and his girl friend had left her home in Kentucky approximately a year before the murder. According to her testimony, they had traveled across the country and back again. They ultimately reached Jacksonville Beach and from there evidently headed for Key West. Their trip down the East Coast was an orgy of drunkenness, robbery and murder. The record reveals that, in addition to the murder of Keen, two other people, who started out as passengers in the Spencer automobile, came to violent deaths enroute to Key West. The evidence of these collateral crimes came into the record as a result of Spencer's own testimony given in explanation of the Keen murder. He laid it on a man he called "Shorty" and testified that he himself later disposed of "Shorty" in an act of self defense. This *731 explanation the jury evidently did not believe. "Shorty's" decomposed body was subsequently located in an area in Monroe County, to which Spencer led law enforcement officers. Appellant's girl friend testified that actually Spencer had murdered the unfortunate "Shorty" and another woman passenger at different times on the way down the Florida East Coast.
All of the grim details of this heinous crime have not been delineated. We have extracted from the record sufficient facts to indicate the conclusion which we offered at the outset to the effect that the jury had before it adequate evidence upon which to find appellant guilty. They were entitled to believe this evidence. They obviously did so.
To obtain a reversal of the judgment, the appellant contends that the trial judge committed error in permitting two deputies sheriff to remain in the court room during the trial when it was known at the outset that they would subsequently be called to testify. These two officers had had a major part in the investigation of the crime. The trial judge was of the view that inasmuch as they were law enforcement officers, who had no personal interest in the results, he would permit them to remain in the court room. The rule in Florida and elsewhere is that the trial judge is endowed with a sound judicial discretion to decide whether particular prospective witnesses should be excluded from the so-called sequestration of witnesses rule. 53 Am.Jur. "Trial" p. 46, §§ 31-33. Ordinarily, when requested by either side, the trial judge will exclude all prospective witnesses from the court room during the trial. The obvious reason for the rule is to avoid the coloring of a witness's testimony by that which he has heard from other witnesses who have preceded him on the stand. It is often less likely that such a result will follow in the case of some law enforcement officers who have had experience in criminal trial work and whose interest in the results is not apt to be personal. Unless a trial judge can be said to have abused the discretion which is his to exercise in such situations, then his judgment will not be disturbed. The burden is on the complaining party to demonstrate an abuse of discretion with resultant injury. In the instant case, we fail to find that the trial judge abused his discretion and there is no indication that the presence of the two officers in the court room during the trial resulted in harm to the appellant. West v. State, 149 Fla. 436, 6 So.2d 7; Robinson v. State, 80 Fla. 736, 87 So. 61; Holder v. State, 136 Fla. 880, 187 So. 781; Young v. State, Fla.App. 3rd, 99 So.2d 304; Brown v. State, Fla.App. 2nd, 111 So.2d 296.
We do not feel that the opinion in McVeigh v. State, 73 So.2d 694, relied upon by the appellant, is sufficiently analogous to justify serious consideration.
The only other point urged for reversal is the contention that the remarks of the Assistant State Attorneys during the closing arguments were of such an inflammatory nature as to influence the jury unduly to the prejudice of the appellant. We think no useful purpose would be served by analyzing in detail the comments of the prosecuting officers. The rule is that considerable latitude is allowed in arguments on the merits of the case. Logical inferences from the evidence are permissible. Public prosecutors are allowed to advance to the jury all legitimate arguments within the limits of their forensic talents in order to effectuate their enforcement of the criminal laws. Their discussion of the evidence, so long as they remain within the limits of the record, is not to be condemned merely because they appeal to the jury to "perform their public duty" by bringing in a verdict of guilty. The prosecutors in the instant case remained within the bounds of the evidence. Washington v. State, 86 Fla. 533, 98 So. 605. In actuality, there is probably very little that the prosecutors themselves could have advanced which would have been any more damning of the conduct of this appellant than the gruesome evidence which *732 was presented from the witness stand. Gaston v. State, 134 Fla. 538, 184 So. 150; Tyson v. State, 87 Fla. 392, 100 So. 254; Henderson v. State, 94 Fla. 318, 113 So. 689.
Although appellant does not by his brief assault the sufficiency of the evidence, we have nevertheless complied with the requirements of Section 924.32, Florida Statutes, F.S.A. which impose upon us the burden of reading all of the evidence. Having done this, we fail to find that there is any cause for reversal or that the ends of justice require a new trial.
The trial having been conducted without error, the judgment is affirmed.
It is so ordered.
ROBERTS, C.J., and TERRELL, THOMAS, HOBSON, DREW and O'CONNELL, JJ., concur.