180 So.2d 340 (1965)
James E. COLLINS, Appellant,
v.
The STATE of Florida, Appellee.
No. 33989.
Supreme Court of Florida.
November 17, 1965.
Giles P. Lewis, Jacksonville, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
*341 TROWBRIDGE, C. PFEIFFER, Circuit Judge:
The defendant, James E. Collins, appeals from a judgment of guilt of rape and a sentence of death. Trial was by jury and the verdict was returned without recommendation of mercy.
The sole point on appeal involves the effect of certain remarks made by the prosecutor in his final argument. Only one of these remarks was objected to and the objection was sustained without further comment or instruction by the court. The defendant questions whether the remarks were of such character that neither judicial admonition nor retraction would have erased their influence on the jury and whether there was a waiver by failure to make timely objection.
The evidence of guilt is overwhelming and need not be discussed at length. It establishes that the defendant went to the home of the twelve year old victim while her mother was absent, tore the screen door to gain entrance, grabbed the girl by her throat, choked her with both hands, forced her to cook food for him, forced her into a bedroom, ripped her shoes and panties from her, repeatedly choked her when she screamed or resisted, attempted to penetrate her, forced her to tell where some "grease" was, smeared this "grease" on his and her private parts, threatened to kill her, hit her with his hands, forced her legs apart, penetrated her, started moving up and down, and, in her words "It just ripped me open." The girl bled, soaking the sheets, and received a tear between her vagina and anus. Medical testimony indicated that she was previously a virgin and that her hymen had been freshly torn.
Following the attack, the defendant choked her again until she promised not to tell on him. While he was removing the sheets from the bed, she took her baby sister and escaped to a neighbor's house where she waited fearfully and with a knife in her hand until her mother returned.
The argument of the prosecutor considered improper by the defendant is
"He makes a big to-do about Charlotte saying that she did not take any food to Collins. This little twelve year old girl, who has gone through the most awesome, horrible, brutal experience that a woman, much less a child, can imagine in their whole lifetime. And then comes this seventh grade student at school into this big Courtroom, with all of the men and the Judge and the lawyers and has to look at this cruel human vulture that raped her and all of her testimony discussing the rape was not shaken the slightest on any of the facts by one of the best criminal minds in the country, didn't recall taking him any food.
"I ask you gentlemen, those of you who have daughters, if one of your daughters, was violated 
"MR. LEWIS: If the Court please, I am going to have to object to this line of argument.
"THE COURT: Objection sustained.
"MR. GORDIE: All right, sir.
"* * *
"Did this man desist at this time, as any normal man would? No, this criminal goes and gets some grease and puts it on the private parts of this little victim and on himself and tries to make her open her legs and she refuses. She testified that he took her hands and pulled them apart and choked her some more. Then, he forcibly injected himself into her and she said, `It just ripped me open.'
"Can you imagine, this twelve year old girl laying there, having been choked nearly to death and this beast just ripped her open.
"* * *
"Does this look like, as Mr. Giles Lewis indicated to you, that some boyfriend *342 may have come by and had intercourse with this little child? These are the panties that she looked at, and from that point on, Delores Palmer didn't, under any circumstances, have anything to do with this vile creature. At that point, she knew her daughter had been ravished and torn apart, and when James E. Collins came up from the porch, as he admitted, himself, that he did, and said, `Give me a chance to explain what happened.' There was no explanation that he could give to that poor mother after seeing her daughter. There was no explanation. And, she reported it immediately to the law as she should have done."
The reference to one of "the best criminal minds in the country" was apparently a compliment to defense counsel who later referred to the years he had prosecuted and the years he had defended. While defendant's attorney attributes the remark to the defendant himself, the record of the hearing on the motion for new trial discloses that both the trial judge and the court reporter understood the remark referred to counsel. In any event, the trial court felt that this remark made no impression on the jury. We fail to see how a person charged with a criminal act can be prejudiced by being described as possessing a criminal mind even if the jury did so understand the remark.
Essentially, the phrases not objected to but urged as fatal error are "cruel human vulture", "vile creature," and "this beast just ripped her open."
Certainly the form of securing sexual satisfaction demonstrated here is cruel, is vile, and is that of beasts, not man. And certainly, too, a beast who rips and tears in the satisfaction of a hunger may well be characterized as a vulture. Since the record here amply supports the descriptions used by the prosecutor, the problem is not whether the defendant behaved as a cruel human vulture, a vile creature, or a beast who ripped the girl open, but rather, the problem is whether the prosecutor exceeded the bounds of proper argument in making these comments.
Justice Terrell summed up the philosophy of this Court in Stewart v. State, 51 So.2d 494 (Fla. 1951), when he stated "The trial of one charged with crime is the last place to parade prejudicial emotions or exhibit punitive or vindictive exhibitions of temperament." He there cautioned counsel to refrain from inflammatory and abusive argument and instructed trial courts to restrain and rebuke counsel from indulging in such argument.
The case under consideration by Justice Terrell, however, involved a remark that he characterized as "a pure gratuity without any basis in the record for it." The charge was child fondling and the remark was "The time to stop a sexual fiend and maniac is in the beginning and not to wait until after some poor little child or some little girl lost her life * * * or mutilated."
In the present case we concluded above that there was ample basis in the record for the remarks made. In this case, also, there is no implication from the words used that the defendant, if left unpunished, would go on to even worse crimes.
Each case must be considered upon its own merits and within the circumstances pertaining when the questionable argument is made. The rule is clear against inflammatory and abusive argument  the problem is applying the rule to the particular facts at hand. The history of the legal profession is clear also in its love of florid arguments and dramatic perorations. The line between the inflammatory and the dramatic is not clear. Here, it has not been crossed to the wrong side.
In a separate category is the unfinished question: "I ask you, gentlemen, those of you who have daughters, if one of your daughters was violated ." Because *343 objection was made and sustained at this point, neither the jury nor this Court can know what was going to be added. Any attempt to conclude this question would be mere speculation on their part and ours. So here, the inquiry must be not whether the question was improper, but whether the direction of the jurors' thoughts to their own daughters was fatal error despite the exclusionary ruling.
In Barnes v. State, 58 So.2d 157 (Fla. 1952), this Court held improper and beyond cure by admonition, the question "What if it was your wife or your sister or your daughter that this beast was after?" There could be no doubt there what was intended by the prosecutor and that remark was only one of several which were clearly beyond proper argument.
In the present case the prosecutor was stopped before he got across to the jury what could have been concluded as an improper remark. What was actually expressed was nothing more than what would naturally occur to any juror who had a daughter or considered the effect of his verdict as a deterrent to the commission of similar crimes upon the daughters of friends and neighbors. Under the circumstances we agree with the trial judge who concluded that this incompleted question was not fatal.
We do not recede from any of our prior pronouncements upon the duty of prosecutors to stay within the realm of proper argument. And needless to say, if the question here had been completed "in an improper manner," we would, by definition, declare the question "improper" and reverse. This, however, is not the case.
Finally, we have examined and considered the record in the light of the requirements of Section 924.32, Fla.Statutes, 1963, F.S.A., and Rule 6.16(b), Florida Appellate Rules, 31 F.S.A., and have reviewed the evidence to determine if the interests of justice require a new trial, with the result that we find no reversible error is made to appear and the evidence does not reveal that the ends of justice require a new trial.
Affirmed.
THORNAL, C.J., and THOMAS, ROBERTS, O'CONNELL, CALDWELL and ERVIN, JJ., concur.