227 So.2d 40 (1969)
H.C. KIRK, Appellant,
v.
STATE of Florida, Appellee.
No. 2376.
District Court of Appeal of Florida. Fourth District.
October 15, 1969.
Ralph Geilich, of Williams, Geilich & Potter, Melbourne, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and J. Terrell Williams, Asst. Atty. Gen., West Palm Beach, for appellee.
CROSS, Chief Judge.
Appellant-defendant, H.C. Kirk, appeals an order of probation entered pursuant to a jury verdict finding the defendant guilty of the crime of extortion. We reverse.
In response to a newspaper advertisement one Donald L. Richer, accompanied by two other persons, went to Florida Wonderland seeking employment as a cowboy. Mr. Richer was hired and was to be paid $50 *41 per week. Shortly after these three men arrived at Florida Wonderland, a laundromat machine on the premises of Florida Wonderland was broken into. The defendant accused these three men of breaking into the laundromat machine. The defendant prepared a confession to that act and told the three parties that if they did not sign it they would go to jail. Mr. Richer and his two companions signed the confession. The defendant then drove them to a bus terminal in Orlando, Florida, and gave them a dollar apiece, telling them never to come back to town or he would have them put in jail.
On May 26, 1966, an information[1] was filed charging the defendant with the crime of extortion. After the normal preliminary procedures, the defendant was tried before a jury. The only witness on direct examination for the state was the complainant, Donald L. Richer. Although this witness was named in the information several times and in the bill of particulars and the list of witnesses as "Donald L. Richard," he testified that his name was Donald L. Richer, and that he had never used the surname "Richard."
On cross-examination Mr. Richer admitted that he did not take seriously the defendant's threat to have him arrested if he returned to Titusville, and that he was not alarmed by it; that in fact he did return to Titusville four days later.
Although the state announced that it had only one witness: Mr. Richer, after Mr. Richer's testimony the state called one Nancy Bodey as a witness. In the absence of the jury, the court allowed the state to proffer this witness' testimony, and then later ruled it out, at which time the state rested. The defendant moved for a directed verdict, which was denied. The defendant then called several witnesses who testified on his behalf. However, the defendant did not testify.
Testimony was elicited to the extent that one Daniel O. Keefer saw Mr. Richer and another party prying open the machine in the laundromat. Mr. Keefer and his wife testified that Mr. Richer had boasted to them that he could charge the defendant with extortion and collect $10,000 from him. At this point the cause was adjourned until the next morning.
When the cause was reconvened, the court asked the jury if anyone had read a newspaper article which had appeared in the newspaper that morning and contained statements prejudicial to the defendant. One juror admitted to the court that he had read the article. The court did not ask the juror if he could disregard the article, but merely admonished him to completely disregard whatever he had read in the paper.
After the defense rested, the state again called Miss Nancy Bodey as a rebuttal witness, and over objection she testified as to her employment for one week at Florida Wonderland and that after she had left her employment, the defendant paid her $25 in cash and that she did not receive any check for her services. The defendant moved to strike all the testimony of this witness on the ground that no predicate had been laid as to her employment by the defendant. The court denied the motion stating that the only purpose for which her testimony was allowed was to rebut the claim that all employees were paid by check.
During the state's closing argument, the defendant on several occasions moved for a mistrial, which was denied.
The jury returned a verdict of guilty against the defendant for the crime of extortion. The trial court adjudged the defendant guilty, suspended sentence, and placed the defendant on probation for ten *42 years after denying a motion for a new trial.
The defendant on appeal claims that the summation before the jury by the assistant county solicitor was so prejudicial as to require a new trial. We agree. However, in making this determination we cannot help but comment that the trial was so fraught with errors that reversal could be bottomed on a multitude of them.
In summation before the jury, the assistant county solicitor made the following remarks:
"Gentlemen, then we have Miss Bodey's testimony that this same kind of thing happened with her. She contradicts the bookkeeper in representations made to you that everything is by check, all employees are paid by check. She says she was paid off by cash by Mr. Kirk. That he refused to do it at first. Threatened to put her in jail if she didn't leave within an hour. The police came down there, checked her identification, said, "What is all the big uproar, Mr. Kirk?" They leave. He offers them $5 when they were promised $25 in the first place. Finally he gives her $25 because he wasn't as successful with her and the other girl as he was with `Shorty' Richer. He couldn't push them around quite as much.
"Cash, Gentlemen, where are Alfred Busser (phonetic), Ralph Clark, the deputy sheriff that was announced as a witness, Grace Buher (phonetic), where is Martin Lindsey.
"Remember Mr. Flanagan that was represented to the Court was a necessary witness for today?
"MR. GEILICH: Your Honor, I move for a mistrial. This is highly improper for the prosecution to be reading off a list of names and asking the Jury where these people are. We are under no obligation to bring anybody here to testify. It is the State's job to prove the case.
"THE COURT: Let me charge the Jury on that point, counsel.
"MR. GEILICH: I think it is highly inflammatory. It gives the impression that we have to prove something.
"THE COURT: It may give that impression, but I am going to tell them that is not the law. And they are sworn to follow the law, counselor. That is all I can do at this point.
"I am going to deny your motion for mistrial.
"MR. GEILICH: I trust counsel here will again be admonished. This is improper argument.
"THE COURT: I can't control either counsel in what their method of argument is, how they should handle the case. The Court cannot handle the case for counsel.
"MR. GEILICH: Surely it is not proper for counsel to argue where are the Defendant's witnesses.
"THE COURT: I am not going to rule it is improper for him to ask where certain witnesses are. In the minds of the Jury the Jury may ask him that question back. I don't know what inferences they are going to draw from these people not being here. That will be up to you and your opponent to argue to the Jury as to what inferences they should draw, if any, in such matters."
We glean from the record that neither before the jury nor outside the presence of the jury was a Mr. Flanagan represented by the defendant to be an indispensable witness. The only reference to any indispensable witness was to one Mr. Blanchard made in the absence of the jury, and Mr. Blanchard testified during the trial.
It is the duty of the trial judge to carefully control the trial and zealously protect the rights of the accused so that he shall receive a fair and impartial trial. The trial judge must protect the accused from improper or harmful statements, or conduct by a witness or by a prosecuting attorney during the course of a trial. It is also the duty of a prosecuting attorney in a trial *43 to refrain from making improper remarks or committing acts which would or might tend to affect the fairness and impartiality to which the accused is entitled. Tribue v. State, Fla.App. 1958, 106 So.2d 630. The prosecuting attorney in a criminal case has an even greater responsibility than counsel for an individual client. For the purpose of the individual case he represents the great authority of the State of Florida. His duty is not to obtain convictions but to seek justice, and he must exercise that responsibility with the circumspection and dignity the occasion calls for. His case must rest on evidence, not innuendo. If his case is a sound one, his evidence is enough. It it is not sound, he should not resort to innuendo to give it a false appearance of strength. Cases brought on behalf of the State of Florida should be conducted with a dignity worthy of the client.[2]
While we quite realize that some latitude must be given to a lawyer's language in a hard-fought case, we think the prosecutor's remarks fell short of the degree of propriety required in these matters. It is our judgment that the trial judge failed to uphold his duty to maintain order and decorum, and to exercise that general control over the trial needed to protect the accused from abuse or intimidation.
The record further reveals that the testimony of the complaining witness, Mr. Richer, was based not on what the defendant told him, but rather on a confession which it is asserted that he and his two companions signed. Over objection, the complaining witness was allowed to relate the contents of this paper notwithstanding the fact that there was no attempt to secure this paper from the defendant or to inform him in any way that such paper should be produced at trial. The only connection of this paper with the defendant was the complaining witness' testimony that "the last time I knew it was in Kirk's hand." There is nothing in the record to reveal whether this was before or after the confession was signed.
Many jurisdictions adhere to the proposition that secondary evidence of the contents of a document is admissible if that document is shown to be in the possession of the one accused of the crime, since the document is regarded as inaccessible to the state. These jurisdictions hold that prior notice to produce such document is not a prerequisite to the admissibility of such evidence. 29 Am.Jur.2d, Evidence § 469. Other jurisdictions, including Florida, adhere to the view that secondary evidence of an incriminating document in the possession of the defendant is admissible only when a proper foundation has been laid by giving the defendant reasonable notice to produce the original. Threadgill v. State, 1918, 75 Fla. 240, 77 So. 880.
The rationale of the Florida view is particularly apparent in the instant case. The record indicates that defendant had no warning that the confession would play any part in the trial of the cause. The original confession possibly could have been of some advantage to the defendant based on the testimony of the complaining witness as Mr. Richer testified that the confession mentioned nothing about grand larceny. We cannot assume that such error would be harmless without further assuming that the primary evidence would substantiate the secondary evidence, and that assumption would amount to a repudiation of the best evidence rule.
For the foregoing reasons, the order of probation is reversed and the cause is remanded for new trial.
Reversed and remanded.
McCAIN, J., and McDONALD, PARKER LEE, Associate Judge, concur.
NOTES
[1] "* * * H.C. Kirk, on the 21st day of April, 1966 * * * did then and there unlawfully [sic] and maliciously, verbally threaten to accuse Donald L. Richard, of a crime and offense, to-wit: Grand Larceny, with the intent thereby to extort money or pecuniary advantage from the said Donald L. Richard, and with intent to compel the said Donald L. Richard to do act or refrain from doing an act against his will * * *."
[2] United States v. Kravitz, 3 Cir.1960, 281 F.2d 581, 587, cert. den. 1961, 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372; United States v. Sober, 3 Cir.1960, 281 F.2d 244, cert. den. 364 U.S. 879, 81 S.Ct. 167, 5 L.Ed.2d 101; United States v. Tucker, 3 Cir.1959, 267 F.2d 212.