WALDEN, Judge
(dissenting):
Defendant was found guilty of a criminal offense. He appeals. I would reverse and remand for a new trial.
It is not difficult in these times to become numbed by the volume of criminal appeals, many of which are frivolous and unfounded. Regardless, it is our function and unswerving obligation to be ever on guard that such appellants are given a full measure of appellate review.
This was a matter of robbery and the only link tying the defendant to the crime was a certain incriminating statement produced by Detective Devin, which was signed by the defendant.
The defendant testified, among other things, that he was illiterate and was unable to read and write except to sign his name. He testified that he did not tell anything to the detective; that he didn’t understand what the detective was talking about; and that he did not understand *56 what was in the paper when he signed it and that he did so only upon promise of the detective to return him to his home. Defendant categorically denied participation in the robbery and stated that he was at home with a toothache at the time, a statement that was corroborated by his fa-, ther. The defendant further testified, “I don’t understand hardly nothing, I’m not very smart. I’m dumb.” He specifically denied and disavowed, statement by statement, the contents of the confession. He testified that the detective was lying as concerns the written statement.
With this backdrop, we approach the critical appellate point accurately stated by defendant-appellant as follows:
“Did the trial court err in refusing to allow appellant in his closing argument to question the credibility of Detective Devin, appellee’s witness?
In closing argument defense counsel argued as follows:
“Then we come to Detective Devin. Now, his testimony was that he responded to notification of a burglary in progress at 7:02 p. m., and these times are significant as I’m sure you are aware.
“He testified that a Detective Rasmin picked up Jimmie Lee Lane, and thereafter he, Detective Devin, questioned him, first advising him of his rights. He testified that later he reduced to writing his questions and this Defendant’s responses to them. Then he testified, that the Defendant made certain admissions to him.
“Now, first, let me say this. When this boy said on the stand that he was dumb, I think probably he got some agreement from you on it. This is not an educated man. He’s a functional illiterate.
“You had testimony that he can print his name. You had testimony that he cannot read, and when you get into the jury room I would like you to scrutinize this statement or these answers ostensibly given during the course of this interrogation to Detective Devin and see if they sound to you like what Detective Devin testified they were, a verbatim recording of this man’s answers.
“Look at the coherence, the progress, the logical progress of these answers, look at the language used and see if you think it is verbatim from this boy’s mouth, or perhaps it has been edited. If you come to the conclusion it has been edited, the next question is, how much has it been edited.
“Further, you have to question just how credible Detective Devin’s testimony is. Now, certainly he painted a very cozy picture of the circumstances under which this interrogation took place.
“This hasn’t been my experience with interrogation of this nature. They are not usually quite that cozy.
“MR. MIKOS: Your Honor, there’s no evidence in this record that this man was in any way intimidated. He never even testified to that.
“MR. WARREN: This was his testimony to the circumstances under which the interrogation took place.
“MR. MIKOS: If he’s intimating, Your Honor, this boy was intimidated, he can’t because there’s no evidence in the record.
“THE COURT: I will sustain the ob j ection.”
It is my judgment that the foregoing ruling of the trial court which cut off the defense effort to attack the credibility of Detective Devin was prejudicial error because, had such effort been successful, it would have destroyed the only possible basis whereby the jury could have convicted this defendant. It was the pivotal point in the case. It is basic that considerable latitude is allowed in arguments on the merits of a case and all logical inferences to be gained from the evidence are permissible. Spencer v. State, Fla.1961, 133 So.2d 729, *57 cert. den. 369 U.S. 880, 82 S.Ct. 1155, 8 L.Ed.2d 283 (1962), cert. den. 372 U.S. 904, 83 S.Ct. 742, 9 L.Ed.2d 730 (1963). See also 32 Fla.Jur., Trials, §§ 126, 127, for the general proposition.
In light of the circumstances above outlined, such as the defendant’s illiteracy and denials and testimony of inducement, coupled with the literary content of the statement, leads this writer to conclude without doubt that it was the prerogative of defense counsel to attack the credibility of the detective and to cast doubt as the defendant’s advocate on the bona fides of the incriminating statement, to the end that the defendant’s case could be properly projected before the jury for their ultimate determination of the truth. The stoppage of this effort almost surely left the jury with no alternative but to accept this statement and convict the accused. I respectfully dissent and record my view that the judgment should be reversed and the case remanded for a new trial.