428 So.2d 733 (1983)
Justin Jerome LIPMAN, Appellant,
v.
STATE of Florida, Appellee.
No. AG-128.
District Court of Appeal of Florida, First District.
March 18, 1983.
*734 George G. Phillips, Pensacola, for appellant.
Jim Smith, Atty. Gen. and Lawrence A. Kaden, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Judge.
In this appeal from his conviction as a principal to counterfeiting, the appellant, Lipman, contends inter alia, that he was denied a fair trial and due process caused by prosecutorial misconduct, and that his right to a meaningful appeal is likewise affected because some 200-500 pages of trial transcript are missing. We agree with Lipman's contentions on these two points and reverse.[1]
*735 In May of 1978, one Ken Massoud was arrested in Orlando by federal agents and charged with, and eventually convicted of, counterfeiting. Massoud agreed to cooperate with law enforcement officials and implicated Lipman, then Massoud's attorney, in the plan. Massoud testified at Lipman's trial that Lipman had approached him with a scheme that would enable them both to get rich by counterfeiting United States currency to be used eventually in drug deals. Massoud stated that he agreed to go along with the plan and that Lipman then rented printing equipment and purchased the necessary paper and ink in Pensacola. Massoud transported the equipment and supplies to Orlando where he rented an office and began counterfeiting. He additionally testified that Lipman advanced money to start the operation, provided Massoud with a car, and told him to go to West Palm Beach to meet a "Dominic Severelli," who was to instruct Massoud in the intricacies of counterfeiting. The operation was soon discovered by federal agents and Massoud was arrested before any of the counterfeit money was distributed, but not before, according to Massoud, he had delivered some $1 million in counterfeit currency to Lipman in Pensacola. The case was tried before a jury, and Lipman was convicted of being a principal to counterfeiting, and sentenced to five years in prison.
As to Lipman's argument relating to prosecutorial misconduct, the record shows that during opening statements, the prosecutor told the jurors that they would "hear some testimony that the defendant's position was that he knew nothing about" the counterfeiting scheme. (e.s.) The prosecutor at that stage of the trial also told the jurors that a secret service agent had come to Pensacola with a subpoena for Lipman to testify before a federal grand jury in Orlando regarding Massoud's counterfeiting and that Lipman had declined to answer questions posed by federal agents on that subject. Lipman contends those remarks were *736 improper in that they suggested Lipman's involvement in other crimes and that they commented on his right to remain silent during the grand jury proceeding. He had declined, he contends, to answer the federal agent's questions because of the attorney/client relationship which then existed between him and Massoud.
During direct examination of Massoud at trial, the witness was allowed to testify, over objection, to previous "activities" in which Massoud alleged he and Lipman were involved, to the fact that Lipman had allegedly told him that the counterfeiting project was being financed by the "big boys up North," and to the fact that he had acted as a "front man" for Lipman. Lipman contends that such references to Mafia influences and prior "activities" served only to prejudice the jury and to suggest prior, unrelated illegal acts. During the state's cross-examination of Lipman, the prosecutor asked him if he had been able to avoid prosecution in the past through "luck." Lipman contends that remark suggested, again, that he had been involved in prior illegal activities. Finally, in closing argument, the prosecutor told the jurors to look at Lipman and they would see that he obviously "knew what was going on" and that the state had presented the "truth of this matter." Those statements, along with the other allegedly improper statements recited above, were all objected to by defense counsel and were the basis for numerous motions for mistrial, all of which were denied.
If each of the above examples of prosecutorial misconduct were considered alone, they may well have amounted to no more than harmless error. However, when all are considered as a whole and in the context of the trial setting, we are compelled to find they amounted to harmful error and to reverse. When the propriety of prosecutorial comments is questioned on appeal, the key question we must ask is "whether or not [we] can see from the record that the conduct of the prosecuting attorney did not prejudice the accused, and unless this conclusion be reached, the judgment should be reversed." Coleman v. State, 420 So.2d 354, 356 (Fla. 5th DCA 1982). We are not unmindful of the many cases which have determined that, where the record as a whole overwhelmingly supports a finding of guilt, error in the form of improper questions or comments by the state is only harmless. See Blair v. State, 406 So.2d 1103 (Fla. 1981); Darden v. State, 329 So.2d 287 (Fla. 1976); Spencer v. State, 133 So.2d 729 (Fla. 1961). Where, however, the evidence presents a "close case" and the jury's verdict hinges on the defendant's credibility, "we must give particularly careful attention to any improper and prejudicial remarks." Richardson v. State, 335 So.2d 835, 836 (Fla. 4th DCA 1976). In this case, which hinged to a great extent on the jury's determination of who was more credible  Massoud or Lipman  we conclude that the prosecutor's remarks could well have prejudiced the accused and we are therefore compelled to reverse. We do not, however, agree with Lipman's final contention that the prosecutorial misconduct was "intentionally designed to provoke a mistrial" and that the state should thus be barred from retrying him because of double jeopardy principles. See State v. Iglesias, 374 So.2d 1060, 1062 (Fla. 3d DCA 1979).
Lipman also contends that his right to a meaningful appellate review of his conviction has been denied by the loss of some 200-500 pages of trial transcript. The events surrounding that loss are less than clear, but the record suggests that after the conclusion of Lipman's trial, the presiding circuit judge, Henry Clay Mitchell, stepped down from the bench and returned to private practice. Circuit Judge Clyde B. Wells was appointed to hear post-trial motions and to impose sentence. Lipman's counsel moved to have Lipman declared indigent so that he would not have to bear the cost of transcribing the record on appeal. Lipman was eventually declared partially indigent and a portion of the trial was transcribed to aid Judge Wells in determining the post-trial motions. After denial of those motions and sentencing, Lipman sought to have the remaining portions of the trial, including voir dire and the testimony of five witnesses, transcribed. Approximately one month *737 later it was discovered that the court reporter, who had been present at the trial, had left the country permanently and that her notes of the remaining portions of the trial were somewhere in a suitcase lost by the airlines. When it became evident that the notes would never surface, the parties stipulated as to which portions of the trial proceedings were missing but were unable to stipulate to the substance of the testimony given.
Portions of the missing transcript would, Lipman contends, support his allegation of pervasive, prosecutorial misconduct. For example, the parties have stipulated that during voir dire the State inquired into the prospective juror's knowledge and beliefs concerning reputed Mafia influence in Pensacola. That line of questioning resulted in the court's excusing the original panel and bringing in a new venire from which the jury was finally selected. Also missing is the transcript of a hearing on the defense motion to exclude testimony of Clarice Wilson, Lipman's girlfriend, on the ground that the prosecutor had intimidated and threatened the witness, as well as Miss Wilson's proffered testimony. It also appears, from the limited stipulations regarding the missing testimony, that exculpatory testimony regarding Lipman's dealings with Massoud, which was the basis of his defense, has been lost. Lipman's secretary, for example, testified that articles of incorporation for "L & M Enterprises" were prepared but not filed. Lipman contends that he and Massoud intended to set up a legitimate printing company under that name and actually had at least one contract with a motel to print promotional brochures. It was further stipulated that Massoud's girlfriend testified that she and Massoud saw Lipman socially in Pensacola, that she knew the two men were in business together, but that she never heard them discussing counterfeiting. Finally, the testimony of Secret Service Agent Stebbins is missing and the parties were unable to stipulate to any of the substance of his testimony.
It has been recognized that where a full transcript of trial proceedings is requested by a defendant but is not available for review, through no fault of the defendant's, and the appellate court determines that the missing portions of transcript are necessary for a complete review of the issues raised on appeal, the appellate court has no alternative but to remand the case for a new trial. Delap v. State, 350 So.2d 462, 463 (Fla. 1977). A defendant may, of course, waive his right to a full transcript, see, Smith v. State, 407 So.2d 894 (Fla. 1982) (defense counsel instructed court reporter not to transcribe closing argument); however no such waiver occurred in this case. Although Lipman's attorney agreed that only select portions of the record need be transcribed initially to enable Judge Wells to familarize himself with the case so that he could rule on certain post-trial motions, that agreement in no way waived Lipman's entitlement to a full transcript once he chose to exercise his right to appeal his conviction.
Because we are of the opinion that a complete review of the issues presented by this appeal is not possible without a complete transcript of the trial proceedings, we are compelled to reverse on this point also and remand for a new trial.
The state has cross appealed, contending that the lower court erred in dismissing counts three and four of the indictment returned against Lipman, charging him with aiding Massoud in attempting to avoid federal prosecution and in attempting to escape from a federal prison. We find no merit in that point and therefore affirm the dismissal of those counts.
Accordingly, this case is REVERSED and REMANDED to the trial court for a new trial.
MILLS and BOOTH, JJ., concur.
NOTES
[1] In addition to the two points on appeal which we find to be dispositive and to require reversal, Lipman contends that the lower court erred in failing to grant his motion for judgment of acquittal; in not dismissing the indictment in toto; and that Section 831.18, Florida Statutes, is unconstitutional. We find no merit in any of those contentions. The state correctly observes that, on review of a denial of a motion for judgment of acquittal, the test is "not whether, in the opinion of the trial court or the appellate court, the evidence fails to exclude every reasonable hypothesis but that of guilt but, rather, whether the jury might reasonably so conclude." Tillman v. State, 353 So.2d 948, 949 (Fla. 1st DCA 1978). When a defendant moves for judgment of acquittal he admits all facts adduced in evidence at that point, along with every conclusion favorable to the state which may be fairly and reasonably inferred therefrom. Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975). On the basis of Massoud's testimony alone it would appear that the lower court did not err in denying Lipman's motion for judgment of acquittal. We are unable, however, to make a conclusive determination of this point due to the fact that a substantial portion of the trial transcript is missing and we do not, therefore, reach the merits of this point. We find the remaining points raised by Lipman, which present challenges to section 831.18, to be devoid of any merit. That section provides:

Whoever engraves, makes or amends, or begins to engrave, make or amend, any plate, block, press, or other tool, instrument or implement, or makes or provides any paper or other material, adapted and designed for the making of a false and counterfeit note, certificate, or other bill of credit, purporting to be issued by lawful authority for a debt of this state, or a false or counterfeit note or bill, in the similitude of the notes or bills issued by any bank or banking company established in this state, or within the United States, or in any foreign province, state or government; and whoever has in his possession any such plate or block engraved in any part, or any press or other tool, instrument or any paper or other material adapted and designed as aforesaid, with intent to issue the same, or to cause or permit the same to be used in forging or making any such false and counterfeit certificates, bills or notes, shall be punished by imprisonment in the state prison not exceeding 10 years, or by fine not exceeding $1,000.
§ 831.18, Fla. Stat. (1981) (e.s.). Lipman first contends that the indictment returned against him should have been dismissed in its entirety because it improperly charged him, alternatively, with aiding and abetting Massoud in violating either the first or second portions of section 831.18. Section 831.18, however, must be read disjunctively so as to define the two ways in which the statute may be violated; accordingly Lipman was properly charged in the alternative. Finally, Lipman contends that section 831.18 is unconstitutional, both facially and as applied in this case, in that it attempts, without adequate notice, to make the mere possession of a duplicating machine illegal. "The judicial test of statutory vagueness is whether the language is specific enough to give persons of common intelligence and understanding adequate warning of the proscribed conduct... . It is our obligation to find allegedly unconstitutionally vague statutes constitutional if application of ordinary logic and common understanding would so permit." State v. J.H.B., 415 So.2d 814, 815 (Fla. 1st DCA 1982) (citations omitted). We find section 831.18 to be sufficiently explicit in its prohibitions to meet that test and therefore reject Lipman's constitutional arguments.