413 So.2d 1 (1982)
McArthur BREEDLOVE, a/K/a McArthur Jenkins, Appellant,
v.
STATE of Florida, Appellee.
No. 56811.
Supreme Court of Florida.
March 4, 1982.
Rehearing Denied May 19, 1982.
*3 Jim Smith, Atty. Gen. and Alan T. Lipson, Asst. Atty. Gen., Miami, for appellee.
Bennett H. Brummer, Public Defender, and Elliot H. Scherker and Karen M. Gottlieb, Asst. Public Defenders, Eleventh Judicial Circuit, Miami, for appellant.
PER CURIAM.
McArthur Breedlove appeals his conviction of first-degree murder and sentence of death. We have jurisdiction[1] and affirm the results of his trial.
A five-count indictment charged Breedlove with first-degree murder, attempted first-degree murder, burglary, grand theft, and petit theft. The charges stemmed from the stabbing death of one victim and the wounding of another which occurred during the burglary of their dwelling. The jury acquitted Breedlove of attempted murder, but convicted him of the other charges. Concurring in the jury's recommendation, the trial court imposed the death sentence for the murder conviction. The court also imposed consecutive sentences of life imprisonment for burglary, five years for grand theft, and sixty days for petit theft.
Breedlove presents six points on appeal: 1) Brady[2] violation; 2) denial of motion to suppress; 3) improper admission of hearsay; 4) improper remarks by prosecutor during closing argument; 5) conviction and sentence for burglary violate double jeopardy clause; and 6) impropriety of death sentence.
In four motions defense counsel requested the production of police reports made by six police officers and detectives and of field investigation cards filed on "suspicious" persons. The trial court denied all four motions without recorded comment. The requested material, along with other unrequested reports, was deposited with the judge who examined it in camera and ordered portions of the material released to defense counsel. All formal statements of persons connected with the case were also furnished to the defense.
On appeal Breedlove claims that the state violated the admonition of Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), that
suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment irrespective of the good faith or bad faith of the prosecution.
In making this claim, Breedlove relies on unfurnished portions of a Detective McElveen's report.[3] This report reflects the substance *4 of a conversation that McElveen had with Breedlove's mother, Mary Gibson, and his brother, Elisha Gibson, to the effect that the mother had not seen several items stolen from the victims' residence in Breedlove's possession and that Breedlove had returned home around 2:30 a.m. (the approximate time of the murder) and had left again between 4:00 and 4:30 a.m. This report also states that both the mother and brother referred to blood on Breedlove's clothes and that the brother described items, later established to have been taken from the victims' residence, which he saw in Breedlove's possession on his return home at approximately 2:30 a.m.
Breedlove's argument on this point, however, ignores, except for one accord reference, United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In Agurs, the Supreme Court identified three discovery situations: 1) undisclosed evidence demonstrates the prosecution's use of perjured testimony; 2) a pretrial request for specific evidence (Brady); and 3) a general request for "Brady material" (Agurs). McElveen's report falls within the third category, and Agurs is controlling on this point.
The state provided two lists of witnesses in which the names of sixteen law enforcement persons appear. These include officers, detectives, technicians, and a stenographer.) Although McElveen's name is on the first list, he was not included in the motions for production which specified the reports of six officers and detectives by name. The record reflects no formal request for all "Brady material," but we believe that McElveen's report, as well as those of the other unspecified law enforcement personnel, is within Agurs' third situation.
Brady's broad holding has been limited somewhat by Agurs:
[T]o reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.
427 U.S. at 108, 96 S.Ct. at 2399, 49 L.Ed.2d 342. Furthermore, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." Id. at 109-10, 96 S.Ct. at 2400. In response to claims very similar to Breedlove's, this Court recently stated that "[d]isclosure requirements for the prosecution principally concern those matters not accessible to the defense in the course of reasonably diligent preparation." Perry v. State, 395 So.2d 170, 174 (Fla. 1980). The record shows that the trial court carefully observed Breedlove's discovery rights. Breedlove has failed to demonstrate that the material contained in McElveen's report could not have been found through reasonably diligent preparation or that nonproduction of this report prejudiced him.
Breedlove also claims that the police reports are discoverable per se as "statements." Florida Rule of Criminal Procedure 3.220 covers statements which are discoverable and defines a "statement" as
a written statement made by said person and signed or otherwise adopted or approved by him, or a stenographic, mechanical, electrical, or other recording, or a transcript thereof, or which is a substantially verbatim recital of an oral statement made by said person to an officer or agent of the State and recorded contemporaneously with the making of such oral statement... .
Fla.R.Crim.P. 3.220(a)(1)(ii). The courts of this state have generally held that police reports are not "statements," except of the officers making them, and that generally they are not discoverable per se as statements of those officers. See State v. Johnson, 284 So.2d 198 (Fla. 1973); Lockhart v. State, 384 So.2d 289 (Fla. 4th DCA 1980); Black v. State, 383 So.2d 295 (Fla. 1st DCA 1980); Dumas v. State, 363 So.2d 568 (Fla. *5 3d DCA 1978), cert. denied, 372 So.2d 471 (Fla. 1979); Pitts v. State, 362 So.2d 147 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1372 (Fla. 1979); Miller v. State, 360 So.2d 46 (Fla. 2d DCA 1978); State v. Latimore, 284 So.2d 423 (Fla. 3d DCA 1973), cert. denied, 291 So.2d 7 (Fla. 1974); State v. Gillespie,[4] 227 So.2d 550 (Fla. 2d DCA 1969). The material in the instant reports does not comprise "statements" because the reports have not been signed, adopted, or approved by the persons (other than the officers) to whom they have been attributed, they do not appear to be substantially verbatim, and they were not recorded contemporaneously with their making. We do not find that these reports are discoverable as "statements" as set out in rule 3.220.
The motions to suppress filed by Breedlove's attorneys sought exclusion of any statements by Breedlove, of evidence found at his mother's home, and of evidence found on his person. On appeal Breedlove only alleges error regarding admission of his statement of November 21, 1978. In that statement Breedlove admitted breaking into a dwelling, taking numerous items, stabbing a man, who had been asleep in a bedroom, with a butcher knife that Breedlove had taken off a table in the living room, and stealing a bicycle to make his getaway. Breedlove alleges that the police violated his fifth amendment rights in obtaining that statement.
Upon learning that Breedlove was in custody, a Detective Nagle of the Hallandale Police Department requested permission to interview him concerning a murder that had occurred in Hallandale several years earlier. Detective Zatrapalek of the North Miami Beach Police Department, lead officer on Breedlove's case, had Breedlove brought over from the county jail. Robert Shultz, a counselor at the jail, escorted Breedlove downstairs and turned him over to two officers.
At the suppression hearing, Shultz testified that Breedlove had said something like "They had better be the people I want to talk to" or "I don't want to talk to certain detectives." He also stated that, on seeing the officers, Breedlove said, "I am not talking to them," and the officers "said something to the effect that `Eventually you will talk to us.'" On appeal Breedlove claims that these statements show that he tried to exercise his right to remain silent and that his subsequent statement is invalid because the police did not "scrupulously honor" (Michigan v. Mosley, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975)) his refusal to talk to them.[5]
Shultz also testified that it was his duty to report any improper police behavior but that he had not observed any improper behavior regarding Breedlove. Shultz had known Breedlove since his incarceration and testified that he had never noticed signs of Breedlove's being physically abused and that Breedlove had never complained to him about being abused. Shultz also said that prisoners could refuse to leave their cells in order to avoid being interrogated, but that Breedlove had never done so.
After arriving at the station, Detective Zatrepalek read Breedlove his Miranda rights and Breedlove signed the rights form. Breedlove then asked to speak with his mother and was not questioned during the hour or so before she arrived. He spoke with her in private and then asked her to tell Zatrepalek that he would make a statement. After speaking with the detectives, Breedlove was again read his rights, signed another card, and made a formal statement. Zatrepalek testified that he had never beaten Breedlove and that, when interviewed by Detective Nagle on the following day, Breedlove asked Zatrapalek to stay with him.
Breedlove, on the other hand, testified that Detectives Zatrepalek and Ojeda had beaten him on November 9, that he refused *6 to go with the officers on the 21st, and after being threatened on the 21st he confessed in order to avoid another beating.[6] The judge found that Breedlove understood his rights on both the 9th and 21st of November and that he freely and voluntarily waived those rights.
Breedlove now claims that the statement, "eventually you will talk to us," was an implied threat constituting coercion and tainting the ensuing statement so that no proper waiver occurred. From the totality of the circumstances, it does not appear that the statement was coerced. Rather, Breedlove chose not to exercise his right to remain silent or to have counsel present, making the damaging statement after talking with his mother. The judge properly concluded that he freely and voluntarily made the statement.
At trial Detectives Ojeda and Zatrepalek testified regarding Breedlove's statement of the 21st. In relating what he said to them, both recited or alluded to the substance of a conversation they had with Breedlove's mother and brother. Neither the mother nor the brother testified at trial, and Breedlove now claims improper introduction of hearsay and violation of the confrontation clause.
Hearsay is an out-of-court statement, other than one made by a declarant who testifies at the trial or hearing, offered in court to prove the truth of the matter contained in the statement. Lombardi v. Flaming Fountain, Inc., 327 So.2d 39 (Fla. 2d DCA 1976).[7] Hearsay is inadmissible for three reasons: 1) the declarant does not testify under oath; 2) the trier of fact cannot observe the declarant's demeanor; and 3) the declarant is not subject to cross-examination. State v. Freber, 366 So.2d 426 (Fla. 1978). "The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements." Dutton v. Evans, 400 U.S. 74, 88, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970). In Dutton the Court went on to say that "the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that `the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' California v. Green, 399 U.S. at 161, 90 S.Ct. at 1936." 400 U.S. at 89, 91 S.Ct. at 219. On the other hand, "[o]ut-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." Anderson v. United States, 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974). Merely because a statement is not admissible for one purpose does not mean it is inadmissible for another purpose. Hunt v. Seaboard Coast Line Railroad Co., 327 So.2d 193 (Fla. 1976); Williams v. State, 338 So.2d 251 (Fla. 3d DCA 1976). The hearsay objection is unavailing when the inquiry is not directed to the truth of the words spoken, but, rather, to whether they were in fact spoken. Id.
In the examination of Detective Ojeda the court sustained defense counsel's objection to his relating what Breedlove's mother said at her residence. Ojeda went on to testify that in talking with Breedlove on the 21st he told Breedlove what his brother had said about the bicycle. The court overruled the defense objection to this, stating that "it is not being offered for the truth of what was said." Other comments made by the mother and brother came in the same way; objections were overruled or sustained as needed. A side bar conference on hearsay was held, following which the judge gave the jury a cautionary instruction on Ojeda's testimony. Prior to cross-examination another side bar conference *7 was held, wherein the defense said it would go into the Gibsons' statements because they had been received for an impermissible purpose. The court cautioned that defense would have to live with what this approach elicited. A similar course of events occurred during Detective Zatrepalek's testimony.
In closing argument, defense counsel brought up the Gibsons' comments and wondered why they had not been called to testify. The state also brought up these comments, referred to their sworn statements (not introduced at trial), said that they told the truth in those statements, and then tied their formal statements to the detectives' testimony.
Defense counsel used these statements by the prosecutor to move for a mistrial because of "putting the truth of Elijah and Mary Gibson's statements in issue," and also asked that the jury be told to disregard the detectives' testimony regarding what the Gibsons had said or else be given another cautionary instruction. Defense counsel also asked that the jury be told to disregard the state's closing argument. The court found the state's argument proper and refused to reinstruct, referring to his earlier cautionary instruction. Defense again referred to the mother and brother in its final argument.
The court properly admitted the detectives' testimony about what the Gibsons said because it came in to show the effect on Breedlove rather than for the truth of those comments. The informal statements, therefore, were not hearsay and could be admitted into evidence. The judge cautioned the jury on how to use this testimony.
In their last motion for a new trial defense counsel cited the prosecutor's argument, alleging prejudicial error. The court denied the motion. A mistrial should be declared for prejudicial error which will vitiate the trial's result. Perry v. State, 146 Fla. 187, 200 So. 525 (1941). If the alleged error does no substantial harm and causes no material prejudice, a mistrial should not be declared. Id. Improper remarks can be cured by ordering the jury to ignore them unless they are so objectionable that such instruction would be unavailing.
The judge refused to renew his cautionary instruction regarding the use of testimony referring to the Gibsons' statements and included no such instruction in those given before the jury retired to deliberate. The questions, therefore, are whether the prosecutor's comments transformed the nonhearsay material into hearsay and whether those comments were so prejudicial that this Court cannot say beyond a reasonable doubt that they had no effect on the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
It appears that the prosecutor's remarks were improper. These remarks, however, were no worse than, and possibly not as harmful as, defense counsel's remarks concerning the Gibsons' statements. On rebuttal defense counsel mentioned the stolen bicycle being found at the Gibson home. He went on to say that the bicycle
could have been ridden by the other four adults in that house, and what about those people? What did they do? They pointed the finger at my client.

Sure it is his mother and brother. I do not like mothers and brothers testifying like that against my client. They said, "He did it. He is the one."

Mr. Godwin would have you believe we can call people like that.
(Emphasis added.) It appears that defense counsel admitted that those statements were true. Considering the totality of the circumstances, we find the prosecutor's statements not so prejudicial as to require a new trial.[8]
On appeal Breedlove alleges that the prosecutor made improper arguments to the jury, thereby violating Breedlove's right to *8 a fair trial. Besides use of the Gibsons' statements, he points to three other prejudicial or inflammatory remarks: 1) allegations of other criminal acts (rape);[9] 2) "vituperative" characterization (referring to Breedlove as an animal);[10] 3) appeal to community prejudice (violence in Dade County).[11]
Wide latitude is permitted in arguing to a jury. Thomas v. State, 326 So.2d 413 (Fla. 1975); Spencer v. State, 133 So.2d 729 (Fla. 1961), cert. denied, 369 U.S. 880, 82 S.Ct. 1155, 8 L.Ed.2d 283 (1962), cert. denied, 372 U.S. 904, 83 S.Ct. 742, 9 L.Ed.2d 730 (1963). Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. Spencer. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. Thomas; Paramore v. State, 229 So.2d 855 (Fla. 1969), modified, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972). A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done." Darden v. State, 329 So.2d 287, 289 (Fla. 1976), cert. denied, 430 U.S. 704, 97 S.Ct. 308, 50 L.Ed.2d 282 (1977). Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks. Id. Compare Paramore with Wilson v. State, 294 So.2d 327 (Fla. 1974).
The judge refused to grant a mistrial, finding the state's argument not prejudicial due to the context in which the objected-to remarks were made. Some of the remarks may have been improper, but we do not find them so prejudicial that a new trial is required.
Breedlove was convicted of both first-degree murder and burglary and received the death penalty for the former and a consecutive life sentence for the latter. On appeal he claims that Pinder v. State, 375 So.2d 836 (Fla. 1979), mandates that the burglary conviction and sentence be vacated because the state proved only felony murder, not premeditated murder. The state, on the other hand, claims that it presented sufficient evidence of premeditation to warrant both convictions and sentences and also that Pinder should be rejected because of Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Breedlove's Pinder claim and the state's Whalen argument have been disposed of in State v. Hegstrom, 401 So.2d 1343 (Fla. 1981). We find, however, that Breedlove's contention is not really an issue in this case because the state introduced sufficient evidence of premeditation.[12]See Hegstrom. Because we find that the jury need not have convicted Breedlove of burglary in order to support the murder conviction, we affirm the convictions and sentences for both first-degree murder and burglary.
*9 As his final point, Breedlove makes several attacks on the death sentence: simple felony murder as a basis for the death penalty violates the eighth and fourteenth amendments; improper aggravating circumstances; limited consideration of mitigating circumstances; and death penalty disproportionate in this case.
Breedlove claims that death is an excessive punishment for a simple felony murder, based on Justice White's concurring opinion in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Both the United States Supreme Court[13] and this Court[14] have found that the death penalty is not per se violative of either the federal or state constitution. Breedlove has presented nothing which would compel a different conclusion.
Breedlove states that "this Court has uniformly reversed death sentences in pure felony-murder cases, absent such a finding of an intent to kill" and cites numerous cases in support of this contention. While most of these cases deal with felony murder, all but one[15] concern jury overrides. They are not applicable to the instant case and do not support the point that Breedlove tries to make.
The court found three circumstances in aggravation:[16] previous conviction of violent felony; homicide committed during a burglary; and heinous, atrocious, and cruel. Breedlove argues that an underlying felony cannot be used in aggravation, but presents nothing which compels declaring the felony-murder aggravating circumstance unconstitutional. The trial court properly found the murder to be heinous, atrocious, and cruel. Although death resulted from a single stab wound, there was testimony that the victim suffered considerable pain and did not die immediately. While pain and suffering alone might not make this murder heinous, atrocious, and cruel, the attack occurred while the victim lay asleep in his bed. This is far different from the norm of capital felonies and sets this crime apart from murder committed in, for example, a street, a store, or other public place.
Breedlove also claims that the prosecutor improperly argued three nonstatutory aggravating factors to the jury: that the jury would make a recommendation only ("passing the buck"); that Breedlove would be eligible for parole; and that Breedlove showed no remorse. While these remarks may have stretched the bounds of proper argument, Breedlove does not appear to have been prejudiced because the court did not find them in aggravation. Cf. Menendez v. State, 368 So.2d 1281 (Fla. 1979) (improper aggravating circumstances found); Riley v. State, 366 So.2d 19 (Fla. 1978) (same).
Breedlove also complains that the court limited the range of mitigating circumstances allowed to be considered and that the instructions gave inadequate guidance for consideration and weighing of these circumstances. The instructions, however, were proper and adequate, and the court did not limit presentation of mitigating evidence.[17] Breedlove now claims that the court erred in failing to find the lack of intent to cause death and impaired mental capacity. Finding felony murder in aggravation was proper, and, after acknowledging the conflicting testimony regarding Breedlove's mental capacity, the court chose to find his capacity not impaired or diminished. In the sentencing order the court stated:
[T]his Court, after weighing and considering the aggravating and mitigating *10 circumstances, is of the opinion that no mitigating circumstances, either statutory, or by any testimony, facts or circumstances presented at the advisory proceeding, exist which outweigh the aggravating circumstances.
In the light of properly found aggravating circumstances, with nothing found in mitigation, imposition of the death penalty was proper.
We therefore affirm Breedlove's convictions and sentences.
It is so ordered.
ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, Chief Justice, dissents:
"Because I believe that the truth of the statements attributed to Elijah and Mary Gibson were put in issue by the prosecution such testimony by the state's witnesses constituted prejudicial hearsay. Hence, I am compelled to reverse the conviction and remand for a new trial."
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[3] After his in camera inspection, the trial judge sealed the police reports. Breedlove's appellate counsel had access to the sealed reports after trial to assist in preparing this appeal. Only McElveen's report is specifically referred to on appeal, and inspection of the reports reveals McElveen's report to be the only one containing possibly favorable information which the defense might not have received in some fashion.
[4] Gillespie contains an analysis of what is and is not Brady material.
[5] Appellant's brief states that Breedlove's public defenders had visited him in jail prior to the 21st and that he had agreed not to speak to police without counsel present.
[6] Breedlove's original public defender, David Finger, testified that, although Breedlove told him prior to the 21st that he had been beaten, Finger saw no evidence of physical abuse, never reported Breedlove's statements regarding the beating and later coercion on the 21st, and never investigated Breedlove's claims.
[7] We note that ch. 81-93, Laws of Fla., slightly modified the definition of hearsay as set out in § 90.801(1)(c), Fla. Stat. (1981).
[8] In denying the motion for new trial the judge responded to defense's objection to the state's entire argument by saying: "I think the context in which the argument was made was not prejudicial in nature."
[9] Breedlove charges that the state implied that Breedlove wanted to rape the woman in the house he was burglarizing. In going through what had happened, the prosecutor said that because of the purse Breedlove knew that a woman lived there. This is a permissible inference. His next comment, however, is not supported by the evidence: "He went prowling through the house to find that woman." Although Breedlove was a convicted mentally disordered sex offender (California), evidence concerning his past record and tendencies was not presented to the jury until the sentencing phase.
[10] The prosecutor characterized the killing as a "savage and brutal and vicious and animalistic attack;" he did not refer to Breedlove as an "animal."
[11] The prosecutor said: "When we walk the streets we take our chances." In response to an objection the court said: "Stay on the evidence in this case." The prosecutor then said: "One place in the world where we ought to be free from this kind of violence, this kind of crime, is in our own home." The court overruled an objection to this remark. These comments appear to reflect common knowledge and are probably the sentiments of a large number of people. They do not appear to be out of place.
[12] This evidence includes, among other things, Breedlove's arming himself with a butcher knife before entering the bedrooms and the defensive wounds suffered by both victims.
[13] Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
[14] State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
[15] Menendez v. State, 368 So.2d 1278 (Fla. 1979), was remanded for resentencing because of improper consideration of aggravating circumstances.
[16] No mitigating circumstances found.
[17] Defense's presentation consisted of witnesses who testified about Breedlove's mental and emotional problems.