515 So.2d 1032 (1987)
Richard A. DOWNING, Appellant,
v.
STATE of Florida, Appellee.
No. BM-88.
District Court of Appeal of Florida, First District.
October 30, 1987.
Rehearing Denied December 8, 1987.
*1033 John F. Tierney, III, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
NIMMONS, Judge.
This is an appeal from a judgment and sentence for conspiracy to traffic in cocaine. Appellant was tried by jury along with a co-defendant, Martha B. Munroe, who was also convicted of conspiracy to traffic.[1] We affirm.
Among other things, the appellant complains that the evidence was insufficient to support the charge and that the trial court erred in denying the appellant's motion for judgment of acquittal. We disagree.
*1034 Bruce Evans, a lay informant, contacted Florida Department of Law Enforcement (FDLE) Agents Layman and Cornelius, advising them that he had been contacted by Martha B. Munroe who wished to purchase cocaine. Evans stated that he had acted as her "mule" on several prior occasions, transporting cocaine or money for her in Denver, San Francisco and other places. On one occasion he was present in Marathon, Florida, when appellant, Munroe and others discussed a cocaine purchase.
The FDLE determined to conduct a "reverse sting" operation. Layman, acting undercover, contacted Munroe who agreed to buy five kilograms of cocaine from Layman. Evans and Munroe met at a Shoney's Restaurant on the Apalachee Parkway and proceeded to the Red Roof Inn where the appellant, known as "Geronimo," occupied Room 225. Evans requested to see the money. Appellant opened a suitcase and removed a man's boot, from which he took money and counted out $140,000. Evans phoned Layman, who arrived in the afternoon and occupied Room 105 with Agent McKeehan. Evans and Munroe went to Room 105 with McKeehan where Layman displayed the cocaine. Appellant stayed in Room 225. Munroe left Room 105 to make arrangements for her tester to test the cocaine. She and appellant were seen departing Room 225 and leaving the hotel with appellant carrying the suitcase. They were observed stopping at a nearby service station and using a telephone. Munroe phoned Evans and told him that there was a van outside the hotel taking pictures.
Munroe and appellant were stopped on I-10 and placed under arrest. The suitcase containing the money was seized. Appellant also had about $1500 cash, and a phone number in his possession that matched one Evans used in Denver to reach Munroe on one of his excursions as a "mule". Appellant and Munroe were both convicted after a joint jury trial, the sole charge against them being conspiracy to traffic in more than four hundred grams of cocaine pursuant to Sections 893.135(1)(b)3. and 893.135(4), Florida Statutes (1985).
Some of the issues raised by appellant were also raised by co-defendant Munroe in her appeal; namely, the sufficiency of the evidence and the propriety of not instructing the jury as to the lesser offense of conspiracy to merely possess cocaine, an offense which the appellant contends is a necessarily lesser included offense of conspiracy to traffic in cocaine. As to those points, we reject the appellant's argument and agree with this court's conclusions and rationale in Munroe v. State, supra.
Appellant further asserts that the trial court erred in determining that the written reports of the FDLE officers who participated in this reverse sting undercover operation were not discoverable. We agree that the court erred on this point.
Well in advance of trial, the defense sought discovery of the reports of these officers. Defense counsel asserted that the reports were discoverable at least to the extent that such reports constituted statements of the officers recounting the events which they either observed or participated in as the transaction which is the subject of this charge was occurring. Defense counsel was quite correct as this is an exception to the general rule of nondiscoverability of police reports. See Miller v. State, 360 So.2d 46 (Fla. 2nd DCA 1978); see also Lockhart v. State, 384 So.2d 289, 291 (Fla. 4th DCA 1980) (the Fourth District observing that "[w]e do not say, however, that [the police reports] are only discoverable when the officers are `eyewitnesses' to the crime").
Appellee's reliance upon such cases as Breedlove v. State, 413 So.2d 1 (Fla. 1982) is misplaced. There, the Court stated:
The courts of this state have generally held that police reports are not "statements," except of the officers making them, and that generally they are not discoverable per se as statements of those officers. [Citations omitted.]
Id. at 4. In Breedlove, the defense contended that the police reports contained what the defense said were statements which had been made to the reporting officer by certain witnesses. Breedlove simply held that the reports had not been signed, *1035 adopted or approved by such witnesses, did not appear to be substantially verbatim accounts of such "statements," and the "statements" were not recorded contemporaneously with their making. Obviously, the instant case is an entirely different situation, one in which the reporting police officer was himself a witness to the crime.
Neither Fla.R.Cr.P. 3.220, which entitles the defendant to the discovery of the statements of witnesses, nor the cases construing such discovery rule provide for immunity from the required disclosure simply because the statement is contained in a report of the police officer/witness. We hasten to add, however, that we do not subscribe to the view that just because the name of a police officer is furnished by the prosecutor pursuant to Fla.R.Cr.P. 3.220(a)(1)(i), the report of that officer is ipso facto discoverable. To the extent that such view is embraced by the Third District in State v. Dumas, 363 So.2d 568 (Fla. 3rd DCA 1978), we disagree with our sister court.[2] To us, such a mechanical interpretation of Rule 3.220 is not justified.
We certify as a question of great public importance the above issue, i.e. whether the written reports of the FDLE agents who were involved  by actual participation in the drug transaction or by witnessing the same  in the undercover reverse sting operation are discoverable as "statements" under Fla.R.Cr.P. 3.220(a)(1)(i).
Although the trial court's denial of discovery was error, we conclude that the error was harmless. The trial judge refused to conduct an in camera examination of the FDLE reports. But, he did order that they be delivered to the court for sealing and be made a part of the record of this case. We have examined the reports and have carefully compared their contents with the trial testimony of the agents who authored the various reports. Basically, the agents testified to the same things which are set forth in their reports and to the same things they had testified to on their discovery depositions which were taken by defense counsel well in advance of the trial.[3] Defense counsel was also permitted pretrial discovery of the audio tape recordings which the officers made during this undercover operation.
It is manifestly clear from the record in this case that disclosure of the police reports to the defense would have had absolutely no effect on the outcome of the case. We therefore hold that the trial court's denial of discovery of the police reports, or failure to conduct an in camera examination of the same, was harmless. See Whiddon v. State, 431 So.2d 290 (Fla. 1st DCA 1983); Black v. State, 383 So.2d 295 (Fla. 1st DCA 1980).
Appellant, however, contends that the trial court's denial of his motion to compel discovery should be treated as a Richardson[4] violation because of the trial court's failure to conduct a Richardson hearing, thus precluding a finding of harmless error and requiring application of Richardson's per se rule of reversal which was recently reaffirmed by the Supreme Court in Smith v. State, 500 So.2d 125 (Fla. 1986).
It has been said that the purpose of the Richardson inquiry is to guide the trial court in ferreting out procedural prejudice caused by a discovery violation and to point the trial court in the right direction in fashioning an appropriate remedy or sanction for the violation. Peterson v. State, 465 So.2d 1349, 135 (Fla. 5th DCA 1985). The court's inquiry is supposed to cover such questions as whether the violation was inadvertent or willful, whether the violation was trivial or substantial, and what effect, if any, the violation had on the *1036 ability of the aggrieved party to properly prepare for trial. Richardson; Peterson.
In the instant case, we do not believe we are dealing with a "violation" in the sense contemplated by the Richardson per se rule of reversal. A Richardson inquiry presupposes a finding by the trial court that there has been a discovery violation. The discoverability of the police reports was fully aired in the hearings well in advance of the trial, resulting in a ruling that the reports were not discoverable. After denying the defendant's motion to compel production of the police reports, we do not feel it was error for the trial court not to conduct a Richardson hearing. We therefore`find inapplicable the Richardson per se rule of reversal.
However, given the strong sentiments expressed by the majority of our Supreme Court in Smith v. State, 500 So.2d 125 (Fla. 1986) embracing the Richardson per se rule  albeit in a distinguishable setting  we certify as of great public importance the question of whether the trial court's failure to conduct a Richardson hearing after denying the defendant's pretrial motion to compel discovery of the police reports requires automatic reversal under Richardson and Smith.
We next turn to appellant's challenge of the sentence he received.[5] He challenges several of the reasons for departure from the sentencing guidelines. First, appellant challenges the trial court's reliance upon the large amount of money which the defendants were prepared to expend on the drugs. Appellant is correct that such is an invalid reason for departure. Dawkins v. State, 479 So.2d 818 (Fla. 2d DCA 1985).
The trial court also relied upon the large amount of drugs involved in this transaction. Over 5,000 grams of cocaine were involved. This is over 12 times the minimum limit of the highest statutory category of trafficking in cocaine. See Sections 893.135(1)(b)3. and 893.135(4), Florida Statutes. Pursuant to this court's en banc opinion in Flournoy v. State, 507 So.2d 668 (Fla. 1st DCA 1987), this reason is valid under such circumstances.
Next, appellant challenges the trial court's reliance upon the appellant's use of an alias, carrying false identification, lying to booking officers concerning his identity and lying to the probation officer concerning his past record during a post trial interview of the appellant as a part of the probation officer's preparation of the presentence investigation report. In part, the trial court relied upon the above as indicia of, as he put it, the "professional" manner in which appellant attempted to carry out his criminal scheme. This has been held to be a valid reason for departure. Dickey v. State, 458 So.2d 1156 (Fla. 1st DCA 1984).
We conclude that it has been adequately demonstrated beyond a reasonable doubt that the trial court would have imposed the same sentence even in the absence of the one invalid reason referred to above. Accordingly, the appellant is not entitled to be resentenced.
We have considered the remaining issues raised by the appellant and find them to be without merit.
AFFIRMED.
SHIVERS and THOMPSON, JJ., concur.
NOTES
[1] The appeal of co-defendant Munroe has been handled separately by another panel of this Court. See Munroe v. State, 514 So.2d 397 (Fla. 1st DCA 1987).
[2] In Dumas, a category of police reports held to be discoverable was described as:

those police reports which are written and signed or otherwise adopted or approved by a person whose name has been furnished by the prosecutor to the defendant upon demand under Fla.R.Crim.P. 3.220(a)(1)(i).
363 So.2d at 571.
[3] There were six FDLE agents who participated  either by surveillance or by direct involvement in the criminal transaction  in the undercover investigation. All six were thoroughly examined by defense counsel in pre-trial depositions.
[4] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[5] Appellant was sentenced to a term of 25 years, 15 years of which was the mandatory minimum sentence required under Sections 893.135(1)(b)3. and 893.135(4), Florida Statutes. The sentencing guidelines scoresheet called for a sentence range of 3 1/2 to 4 1/2 years.