536 So.2d 189 (1988)
Richard A. DOWNING, Petitioner,
v.
STATE of Florida, Respondent.
No. 71629.
Supreme Court of Florida.
September 22, 1988.
Rehearing Denied December 14, 1988.
John F. Tierney, III, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen. and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for respondent.
GRIMES, Justice.
Petitioner Richard Downing and his codefendant, Martha Munroe, were the objects of a reverse-sting operation run by the Florida Department of Law Enforcement (FDLE). They were charged with conspiracy to traffic in cocaine[*] and tried jointly. The jury found both guilty as charged. Downing's conviction and twenty-five year sentence were affirmed by the First District Court of Appeal. That court certified the following questions as being of great public importance.
[I] [W]hether the written reports of the FDLE agents who were involved  by actual participation in the drug transaction *190 or by witnessing the same  in the undercover reverse sting operation are discoverable as "statements" under Fla.R. Cr.P. 3.220(a)(1)(i).
Downing v. State, 515 So.2d 1032, 1035 (Fla. 1st DCA 1987).
[II] [W]hether the trial court's failure to conduct a Richardson hearing after the defendant's pretrial motion to compel discovery of the police reports requires automatic reversal under Richardson and Smith.

Id. at 1036. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The discoverability of police reports under rule 3.220(a)(1) is unclear. The rule itself reads in pertinent part:
(i) The names and addresses of all persons known to the prosecutor to have information which may be relevant to the offense charged, and to any defense with respect thereto.
(ii) The statement of any person whose name is furnished in compliance with the preceding paragraph. The term "statement" as used herein means a written statement made by said person and signed or otherwise adopted or approved by him, or a stenographic, mechanical, electrical, or other recording, or a transcript thereof, or which is a substantially verbatim recital of an oral statement made by said person to an officer or agent of the State and recorded contemporaneously with the making of such oral statement, provided, however, if the court determines in camera proceedings as provided in subsection (i) hereof that any police report contains irrelevant, sensitive information or information interrelated with other crimes or criminal activities and the disclosure of the contents of such police report may seriously impair law enforcement or jeopardize the investigation of such other crimes or activities, the court may prohibit or partially restrict such disclosure.
The rule obviously contemplates the discovery of some police reports because it contains an exception for police reports containing sensitive information or information interrelated with other crimes.
In an early case it was held that police reports which do not quote a person directly or are not signed or shown to that person are not statements within the meaning of the rule so as to be subject to discovery. State v. Latimore, 284 So.2d 423 (Fla. 3d DCA 1973), cert. denied, 291 So.2d 7 (Fla. 1974). However, in Miller v. State, 360 So.2d 46 (Fla. 2d DCA 1978), the court recognized that police reports could constitute statements of the police officers themselves and held them to be discoverable when the officers making the reports were actual eyewitnesses to or victims of the crime charged. Thereafter, the court in State v. Dumas, 363 So.2d 568 (Fla. 3d DCA 1978), cert. denied, 372 So.2d 471 (Fla. 1979), adopted the rationale of Latimore and Miller, but the language of that opinion has been interpreted as leaving open the possibility that police reports are ipso facto discoverable. See Downing v. State, 515 So.2d at 1035.
Lockhart v. State, 384 So.2d 289 (Fla. 4th DCA 1980), recognized two theories under which police reports would be discoverable pursuant to rule 3.220(a). In the first instance, written statements made by victims or other witnesses contained in police reports would be discoverable if signed, approved or adopted by them or if such statements had been recorded or transcribed or if the reports contained substantially verbatim recital of such statements recorded contemporaneously by an officer or agent of the state. The second theory under which police reports would be discoverable was premised on the belief that the reports themselves may under some circumstances be considered statements of the officers who made them. After analyzing the Federal Jencks Act on which our rule was modeled, the court held that police reports would be discoverable as statements of the officers who made them when the officers were witnesses to the crime or had particularly crucial information pertinent to its prosecution.
Thereafter, in rejecting the contention that police reports were discoverable per se as statements under the rule, this Court in Breedlove v. State, 413 So.2d 1, 4, 5 (Fla.), *191 cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982), said:
The courts of this state have generally held that police reports are not "statements," except of the officers making them, and that generally they are not discoverable per se as statements of those officers.... The material in the instant reports does not comprise "statements" because the reports have not been signed, adopted, or approved by the persons (other than the officers) to whom they have been attributed, they do not appear to be substantially verbatim, and they were not recorded contemporaneously with their making.
(Citations omitted) (footnote omitted). Because it was not before us, we did not have to address the possibility that police reports would be discoverable where the officers themselves were witnesses to the crime.
In the instant case, Downing sought to discover the written reports of the FDLE officers who participated in the reverse-sting undercover operation. In the course of surveillance, the officers were eyewitnesses to Downing's actions. The First District Court of Appeal held that these reports should have been furnished to the extent that they constituted statements of the officers recounting the events which they either observed or participated in as the transaction which was the subject of the charge was occurring. We agree with this conclusion.
A defendant should be entitled to obtain the statement of any person who is a witness to the crime of which he is charged even when such witness is a law enforcement officer. On the other hand, we also agree that police reports are not ipso facto discoverable simply because they are made by an officer who is listed as a witness under rule 3.220(a)(1)(i). With respect to those instances in which a police report may contain crucial information personally obtained by the reporting officer who was not an eyewitness to the crime, we adopt the reasoning of the court in Lockhart v. State when it said:
Thus, we hold that police reports are not discoverable, per se, as "statements" of the officers who made them. We do not say, however, that they are only discoverable when the officers are "eyewitnesses" to the crime, as was the case in Miller, supra. We recognize the trial court's discretion to permit discovery in certain other instances. For example, a police officer's report describing the scene of a crime after the actual commission of the crime could be of singular importance in establishing a point crucial to the case at trial. Such an instance could exist where the officer has given conflicting statements regarding the victim's injured condition, yet states in his report that the victim was not injured. Thus, although there can be no doubt that there are instances in which a police officer's non-eyewitness testimony is highly probative of the guilt or innocence of the accused, such a situation is not presented here.
384 So.2d at 291. Therefore, in instances where a police officer's non-eyewitness testimony is highly probative of the guilt or innocence of the accused, the report is discoverable.
When the district court held that the state should have been required to furnish Downing with the police reports, it then became necessary to address the issue referred to in the second certified question. Downing contended that the trial judge's erroneous ruling coupled with the refusal to examine the reports in camera was the equivalent of a discovery violation under Richardson v. State, 246 So.2d 771 (Fla. 1971), which mandated a per se reversal pursuant to Smith v. State, 500 So.2d 125 (Fla. 1986). We agree with the court below that a Richardson hearing was unnecessary.
The need for a Richardson inquiry occurs in a trial setting. If the trial judge determines that a discovery violation occurred, the judge must then conduct an inquiry into all of the surrounding circumstances, including such questions as whether the violation was inadvertent or willful, whether it was trivial or substantial, and *192 what effect it had upon the ability of the opposing party to prepare for trial. Richardson.
As the district court pointed out, "[t]he discoverability of the police reports was fully aired in the hearings well in advance of the trial, resulting in a ruling that the reports were not discoverable." 515 So.2d at 1036. If the judge believed the reports were not discoverable, it would have been inconsistent to hold a Richardson hearing, which presupposes a discovery violation and is intended to determine which sanctions, if any, are appropriate. We answer the second certified question in the negative.
After holding that the police reports should have been furnished to Downing, the district court examined the reports and concluded that they contained essentially the same information as testified to by the officers in their depositions. The court also noted that defense counsel had been permitted discovery of audio tape recordings made by the officers during the undercover operation. Hence, the court held that the failure to furnish the reports was harmless error. Following oral argument before this Court, we provided Downing's counsel with copies of these reports and requested supplemental briefs on the question of harmless error. In his supplemental brief, Downing asserts various reasons why the failure to provide these reports to him prejudiced his preparation for trial, but only one point requires discussion.
One FDLE agent's report contained information that indicated that Munroe had $25,000 in cash several days prior to her arrest. Downing asserts that the fact that Munroe had a large amount of cash negates the state's theory that Munroe was a broker who put the informant, as the potential seller of the cocaine, in touch with Downing, who had the money to make the purchase. Downing argues that armed with this knowledge he might have persuaded the jury that it was Munroe who was doing the buying, and thus there would have been no conspiracy. Since Downing's counsel argued at trial that his client was merely accompanying Munroe, he now maintains that the $25,000 allegedly in Munroe's possession would have buttressed that argument.
We are not persuaded by petitioner's logic and do not believe the statement that Munroe had $25,000 in cash would have helped him at trial. First, the purchase price of the cocaine was to be $140,000, of which $25,000 is less than twenty per cent. Second, the testimony at trial was that when the confidential informant asked to see the money it was Downing who opened his own suitcase and took $140,000 from a man's cowboy boots. Third, there was evidence that Downing had accompanied Munroe and the informant to Marathon, Florida, for another cocaine transaction. Finally, there was testimony from which one could infer that Downing was Munroe's "tester," that is, the person who would test the cocaine for purity. In light of all this evidence, the fact that Munroe had a substantial but relatively small amount of cash would not have persuaded reasonable jurors that Downing was not involved in the conspiracy. Thus, we approve the district court's decision that the error in refusing to order the state to provide these reports was harmless.
Downing makes several other arguments on matters not encompassed by the certified questions. Only one of these arguments has merit. The trial court exceeded the recommended guidelines sentence of three and one-half to four and one-half years and imposed a twenty-five-year sentence. On appeal the district court rejected one of the trial judge's reasons for departing: the large amount of money the conspirators were prepared to expend on drugs. Nevertheless, the court affirmed the sentence on the premise that the judge would have imposed the same sentence even without the invalid reason for departure.
Subsequent to the district court decision, this Court specifically invalidated another of the trial court's reasons for departing: the amount of drugs involved. Atwaters v. State, 519 So.2d 611 (Fla. 1988). The balance of the reasons listed for departure can be summarized as concluding that the *193 crime was carried out in a professional manner. Many of the circumstances relied upon to support this conclusion occurred after Downing's arrest and had little to do with how the crime was committed. Without ruling out the possibility that this could be a valid reason for departure, (see Dickey v. State, 458 So.2d 1156 (Fla. 1st DCA 1984)), we do not find that the state has proved beyond a reasonable doubt that such is the case here. Thus, we cannot agree with the propriety of the departure sentence of twenty-five years. However, the court was required by sections 893.135(1)(b)(3) and 893.135(5) to impose a fifteen-year minimum mandatory sentence. See Fla.R.Crim.P. 3.701(d)(9).
We approve the opinion of the district court of appeal in all respects except with respect to Downing's sentence. We quash that portion of the opinion affirming the twenty-five year sentence and direct that Downing be resentenced to a minimum mandatory term of fifteen years.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW and BARKETT, JJ., concur.
KOGAN, J., concurs in result only.
NOTES
[*] FDLE had hoped that Downing and Munroe would buy five kilograms of cocaine from an undercover confidential informant and an undercover agent. The proposed purchase did not come off as planned when Munroe spotted FDLE agents photographing from a van.